**In the Matter of the ESTATE OF Ross L. REED, Deceased.**

**Sallye REED, Appellant (Plaintiff),**

v.

**Margaret D. REED, Executrix and Personal Representative of the Estate of Ross L. Reed, Appellee (Defendant).**

**No. 88–137.**

Supreme Court of Wyoming.

Jan. 31, 1989.

C.S. Hinckley of Hinckley and Hinckley, Basin and Roy Stoddard, Jr., Cheyenne, for appellant (plaintiff).

John J. Metzke of Hirst & Applegate, Cheyenne, for appellee (defendant).

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

This appeal is set forth by a daughter as a will contest between herself and her stepmother over her father's estate and questions the propriety of the dismissal of the daughter's contest to the Wyoming probate. The lash of their mutual ill will is well chronicled. The will, which disinherited the daughter in favor of the stepmother, was originally probated in California under The Independent Administration of Estates Act, Cal.Probate Code §§ 591–591.9 (West 1988)[1] for a minimum estate (alleged $500). The will was then presented for admission in Wyoming as a foreign will to probate the mineral estate here valued in excess of $2 million. The trial court dismissed the daughter's amended complaint as failing to plead with particularity fraud, duress, menace, and undue influence as being both insufficient in text and too late in time to contest.

The daughter (appellant) comprehensively raised several issues.[2] We condense the

1. The Cal.Probate Code §§ 591–591.9 have since been repealed and are continued in §§ 10400–10503 (West Supp.1989) without substantive change.

2. Appellant argumentatively phrased the issues as:

 1. Was this matter before the Trial Court as upon a Motion for Summary Judgment under Wyoming Rules of Civil Procedure 12 and 56? * * *

 2. Does the record in this case clearly disclose numerous genuine issues of material fact, such that summary judgment in favor of Appellee (Defendant) was and is improper? * * *

 3. Are the California Probate Court proceedings totally irrelevant to any issue in this case, on any or all of at least all of the following grounds:

 (a) The decision (or non-decision) of the California Probate Court as to the validity of decedent's Will is not entitled to "full faith and credit" as to real estate located in Wyoming.
 (b) The decision (or non-decision) of the California Probate Court as to the validity of decedent's Will is not res judicata as to Appellant, because (1) the California Probate Court had no subject matter jurisdiction over title to real estate located in Wyoming, and (2) Appellant did not contest the Will in the California Probate Court, and therefore there was no trial on the merits in such court as to the validity of the Will.
 (c) Under well-established rules of Conflict of Laws, all the law of Wyoming governs as to the validity of a Will, insofar as it purports to affect title to real estate located in Wyoming.

issues to three dispositive bases: (1) whether the motion to dismiss was converted to a summary judgment; (2) whether the California probate is controlling over real property located in Wyoming; and (3) whether the notice given was insufficient. We reverse and remand.

## FACTS

A resident of California at death, former Wyomingite Ross L. Reed died on March 29, 1984 leaving his second wife, Margaret. D. Reed (appellee), as surviving spouse and Sallye Reed (appellant) as his sole surviving child from his first marriage. Ross L. Reed had amassed extensive property both in Wyoming and California with much of the California property held in joint tenancy which passed without probate. The remaining California assets of a stated value of $500 were transferred to appellee when the will was offered for California probate, to which appellant did not appear nor contest. Appellee, as personal representative of the estate, then offered the will as a foreign probated will in this jurisdiction under W.S. 2–11–101 through 2–11–303 to administer the extensive Wyoming mineral interests. The District Court of Uinta County, Wyoming admitted the will on Oc-

(d) The Wyoming three months' (after date of first publication of a proper Notice of Probate) statute of limitations as to timely commencement of a Will contest is, like statutes of limitations generally, to be interpreted and applied as a part of the law of the forum, as to Will contests commenced in Wyoming, relating to title to real estate located in Wyoming.
(e) A genuine issue of material fact exists as to whether or not the California Probate Proceedings are void because of the fraud of the Appellee.
(f) A proper construction of Sections 2–11–101 et seq., W.S., required Appellee to comply with all of the notice provisions of the Wyoming Probate Code, just as though the Will had first and originally been admitted to probate by the Wyoming Probate Court, and thereby permitted Appellant thereupon to commence a Will contest.

4. Was the publication of notice in the newspaper of the opening of the decedent's estate in the Wyoming Probate Court fatally defective for failure to comply with Section 2–7–201, W.S. in failing to state:
"Any action to set aside the Will shall be filed in the court within three months from the date of the first publication of this notice, or thereafter be forever barred"? * * *

5. Did Appellee, as Personal Representative of the estate of the decedent in the Wyoming probate proceedings, fail to exercise due diligence in ascertaining the "reasonably ascertainable" last known address of Appellant, when Appellant resided in the same town in California as Appellee, Appellee was aware of this, Appellant's correct mailing address was set forth in the then current telephone directory of said town, but instead Appellee caused copies of the Notice and the Will of the decedent and Order of the Wyoming Probate Court admitting same to probate to be sent to an attorney in California who was not attorney of record for Appellant in the California probate proceedings, and was not attorney of record for Appellant in the Wyoming proceedings? * * *

6. Did Appellee's failure to publish a proper Notice in the Wyoming newspaper, and failure to exercise due diligence in learning Appellant's "reasonably ascertainable" last known mailing address and mail copies of the Notice and Will and Order of the Wyoming Probate Court admitting same to probate, cause a result such that the three months' period for filing a will contest under Wyoming law never started to run? * * *

7. Does the record in its entirety show that Appellant properly pleaded a claim upon which relief should be granted, as to the will contest issues? * * *

8. Does the record in its entirety show that Appellant properly pleaded, and stated a claim upon which relief should be granted, as to the fraud of Appellee upon the California Probate Court, the Wyoming Probate Court and Appellant? * * *

9. Did the notice of the California probate proceedings, with respect to Appellant, fail to meet the requirements of procedural due process of law under the Fourteenth Amendment to the U.S. Constitution, in that said notice was not reasonably calculated to inform in that it did not specify Appellant's right to bring a will contest, and the limitation of time within which said contest could be brought? * * *

10. Did Appellee's admitted failure to comply strictly with the Wyoming Statutes as to the content of the Notice published in the Wyoming newspaper as to the commencement of proceedings in the Wyoming Probate Court upon the decedent's estate, together with Appellee's failure to use due diligence in ascertaining the "reasonably ascertainable" last known address of Appellant so that copies of the Notice and Will and Order of the Wyoming Probate Court admitting same to probate could be properly mailed to Appellant at Appellant's proper address, operate to deprive Appellant of procedural due process of law under the Fourteenth Amendment to the United States Constitution? * * *

tober 4, 1985. Therefore, a notice was published in the Uinta County Herald. The notice, will, and Wyoming order admitting the will to probate were contendably mailed, not to appellant, but to a California attorney who had some years before represented appellant. No direct mailing to the heir is alleged or admitted. Eighteen months later, on April 21, 1987, appellee's Wyoming law firm was advised that appellant had not received notice of the Wyoming proceedings. This will contest was instituted on June 8, 1987 and it is from dismissal that this appeal ensued.

## MOTION TO DISMISS

Although originally undertaken as motions to dismiss under W.R.C.P. 12(b)(1), (4), (5), and (6) for lack of subject matter jurisdiction; insufficient process; insufficient service of process; and failure to state a claim upon which relief could be granted, this matter was converted to a summary judgment character under W.R. C.P. 56 for our review by the district court's consideration of matters outside the pleadings such as affidavits and memoranda. See W.R.C.P. 12(b); *Torrey v. Twiford*, 713 P.2d 1160 (Wyo.1986); *Kirby Bldg. Systems, Inc. v. Independence Partnership No. One*, 634 P.2d 342 (Wyo.1981); and *Wyoming Ins. Dept. v. Sierra Life Ins. Co.*, 599 P.2d 1360 (Wyo.1979). An extended recitation of summary judgment analysis will not be pursued, but at its foundation is the principle that a summary judgment should be granted only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Also, the record is examined in the light most favorable to the party against whom the motion was sought. See *Matter of Estate of Newell*, 765 P.2d 1353 (Wyo.1988); *Frieden Construction, Inc. v. Lower & Company*, 766 P.2d 527 (Wyo.1988); *Matter of Estate of Obra*, 749 P.2d 272 (Wyo.1988); and *Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986). Thus, this case will be reviewed as a summary judgment decision with all favorable inferences favoring appellant in evidentiary analysis.

## SITUS OF PROPERTY

Appellee contends that the California probate is conclusive as to the validity and effect of the will for the ancillary administration[3] of the Wyoming mineral estate. We disagree. Wyoming has been faced with this conflict of laws dilemma previously and held for many years that the lex loci rei sitae controls as to real property within this state. Justice Blume exhaustively examined this subject in *In Re Ray's Estate*, 74 Wyo. 317, 287 P.2d 629, 633–34 (1955) (quoting Annotation, *Decree of Court of Domicil Respecting Validity or Construction of Will, or Admitting it or Denying its Admission to Probate, as Conclusive as Regards Real Estate in Another State Devised by Will*, 131 A.L.R. 1023, 1026 (1941)) and summarized the situation:

**3.** The term "ancillary administration" does not connote a subordinate or inferiority to the domiciliary administration. Ancillary administration is simply the probate that occurs where a decedent had property but was not domiciled at the time of his death. *First Nat. Bank of Brush, Colo. v. Blessing*, 231 Mo.App. 288, 98 S.W.2d 149, 151 (1936). Justice Blume, when faced with the terminology of principal administration and auxiliary administration, adopted a similar stance in *In Re Smith's Estate*, 55 Wyo. 181, 97 P.2d 677, 683–84 (1940) (quoting *Harvey v. Richards*, 1 Mason 381 (Mass.1818)) by explaining:

"I have no objection to the use of the terms principal and auxiliary, as indicating a distinction in fact as to the objects of the different administrations; but we should guard ourselves against the conclusion, that there-

fore there is a distinction in law as to the rights of the parties. There is no magic in words. Each of these administrations may be properly considered as a principal one, with reference to the limits of its exclusive authority; and each might, under circumstances, justly be deemed an auxiliary administration. If the bulk of the property, and all the heirs and legatees and creditors were here, and the foreign administration were only to recover a few inconsiderable claims, that would most correctly be denominated a mere auxiliary administration for the beneficial use of the parties here, although the domicile of the testator were abroad."

See also Averill, *Wyoming's Law of Decedents' Estates, Guardianship & Trusts: A Comparison With The Uniform Probate Code—Part III*, IX Land & Water L.Rev. 567, 568 (1974).

"Subject to statutory provisions to the contrary, express or by construction, and a few cases to the contrary, some of which are explainable on statutory grounds, it may be stated generally that the great weight of authority favors the rule that a judgment or decree of a court of a decedent's domicil passing (expressly or by implication from admission to probate) upon the validity or construction of his will, devising real property in another state, is not conclusive as to that question, so far as it concerns such real property, in the courts of the other state, either upon parties or nonparties to the proceeding in which the judgment in the former state is rendered, whether considered under the full faith and credit provision or the doctrine of res judicata or estoppel by judgment or upon general grounds as to conclusiveness of judgments."

Consequently, for over forty-five years it has been "settled law that the devolution of real property in this state and the effect of the decedent's will must be determined by the laws of this state." *In Re Ray's Estate*, 287 P.2d at 635. See also *Rivermeadows, Inc. v. Zwaanshoek Holding and Financiering, B.V.*, 761 P.2d 662, 667 (Wyo.1988); *Matter of Miller's Estate*, 541 P.2d 28, 33–34 (Wyo.1975); *In Re Estate of Gibbs*, 73 Wyo. 425, 280 P.2d 556, 559–60 (1955); and *In Re Smith's Estate*, 55 Wyo. 181, 97 P.2d 677 (1940). Justice Brown, dissenting in *Matter of Estate of Harrington*, 648 P.2d 556, 575 (Wyo.1982), concisely explained that "[t]he rule exists because it is particularly important that there be certainty, predictability and uniformity of result and ease in the determination and application of the law to be applied concerning transactions of land." An ascertainment of Wyoming law reveals that clearly through common law, Wyoming has adopted the lex loci rei sitae principle. Although not considered by either party in brief, that universal rule has been statutorily addressed by W.S. 2–6–104[4] which provides:

The meaning and legal effect of a disposition in a will is determined by the law of the state in which the will was executed, unless the will otherwise provides or unless the application of that law is contrary to the public policy of this state otherwise applicable to the disposition.

The Reed will was executed in California without any provision stating which law should be applied; thus, California law must be examined to determine how real property located in California devolved under a foreign probated will would be treated. Our detour through California law need only be brief because California recognizes the lex loci rei sitae controls as to real property without any statutory modification. See *In Re Estrem's Estate*, 16 Cal.2d 563, 107 P.2d 36, 38 (1940); *In Re Reynolds' Estate*, 217 Cal. 557, 20 P.2d 323, 325 (1933); *In Re Bowditch's Estate*, 189 Cal. 377, 208 P. 282, 283 (1922); *Muth v. Educators Sec. Ins. Co.*, 114 Cal.App.3d 749, 170 Cal.Rptr. 849, 854 (1981); *Thatcher v. City Terrace Cultural Center*, 181 Cal.App.2d 433, 5 Cal.Rptr. 396, 407 (1960); *In Re Brace's Estate*, 180 Cal.App.2d 797, 4 Cal.Rptr. 683, 686 (1960); and *In Re Estate of Patmore*, 141 Cal.App.2d 416, 296 P.2d 863, 865 (1956). Consequently, with California law and Wyoming law substantially the same—the law of the situs of the real property controls—it is not necessary to pursue a further analysis of W.S. 2–6–104 nor determine if the public policy of Wyoming would be violated. *Douglas v.*

---

**4.** The district court and parties seemed to get tripped up by only applying W.S. 2–11–104 as the conflict of laws provision. W.S. 2–11–104 provides:

If upon presentation it appears to the satisfaction of the court that the will has been duly proved, allowed and admitted to probate outside of this state and that it was executed according to the law of the place in which the same was made, or in which the testator was at the time domiciled, or in conformity with the laws of this state, it shall be admitted to probate, which probate has the same force and effect as the original probate of a domestic will.

While W.S. 2–11–104 is part of Wyoming's Uniform Foreign Probate Act, it is only a starting point and does *not* specify which law should be applied to the meaning and legal effect of a disposition in a will once it is admitted to probate in Wyoming.

*Newell,* 719 P.2d 971, 981 (Wyo.1986); *Matter of Estate of Campbell,* 673 P.2d 645, 647 n. 3 (Wyo.1983). See *Lipe v. Lipe,* 728 P.2d 1124 (Wyo.1986) for consideration of foreign jurisdiction interpretation of its own law. Historically, California was the source of much of the early Wyoming statutory law on probate as 1890 Wyo.Sess. Laws ch. 70. See *Rice v. Tilton,* 14 Wyo. 101, 82 P. 577 (1905).

### NOTICE

 With determination that Wyoming law governs as to real estate, analysis is directed to the notice compliance for this probate under the Wyoming statutes.[5] At the basis of the contest action and implicit in the district court's dismissal was the conclusion that the Wyoming notice published in the newspaper was sufficient to meet W.S. 2–7–201[6]. The propriety of any contest hinges on the validity of the notice which starts the three months limitation time for will contest. The sufficiency of the published notice is also dispositive as to any contended mailed notice under W.S. 2–7–205(a)[7] because any notice allegedly sent to appellant was the same as the published notice. The published notice stated:

> You are hereby notified that on the 4th day of October, 1985, the Estate of the above named decedent was admitted to probate by the above named Court, and that Margaret D. Reed was appointed Personal Representative thereof.

Notice is further given that all persons indebted to said Decedent or to said Estate are requested to make immediate payment to the undersigned at [Wyoming law firm].

Creditors having claims against said Decedent or the estate are required to file them with the necessary vouchers, in the office of the Clerk of the District Court of said Court, on or before three months after the date of the first publication of this notice, and if such claims are not so filed, unless otherwise allowed or paid, they will be forever barred.

 Appellee recognizes that this notice provision lacks comportment with the statute by not stating that any action to set aside the will must be filed within three months, but argues that substantial compliance is sufficient. Although we have never had an occasion to directly construe the required notice under W.S. 2–7–201, we disagree with appellee's position. Appellee solely relies on *Hartt v. Brimmer,* 74 Wyo. 356, 287 P.2d 645 (1955) to conclude her notice was sufficient. However, *Hartt,* 287 P.2d at 648 is distinguishable in that there was no contention the notice was not published in accord with statutory mandate, and the parties signed a waiver to any required statutory mailed notice.

The legislature in W.S. 2–7–201 specifically outlined the elements that must be contained in a notice, and additionally provided a form which could be easily utilized. The statute is clear and precise. We cannot construe out the omitted requirements

---

**5.** Although not a basis for our decision, it is interesting to note that in a California ancillary probate proceeding, the California notice provisions apply. *In Re Clark's Estate,* 148 Cal. 108, 82 P. 760, 766–67 (1905); *Robertson v. U.S. Nat. Bank,* 235 Cal.App.2d 63, 44 Cal.Rptr. 871, 874 (1965).

**6.** W.S. 2–7–201 provides:

Upon admission of a will or an estate of an intestate decedent to probate and issuance of letters, the personal representative shall cause to be published once a week for three (3) consecutive weeks in a daily or weekly newspaper of general circulation in the county in which the probate is pending, a notice of admission of the will or estate to probate and of the appointment of the personal representative. *The notice shall state that any action to*

*set aside the probate of the will shall be brought within three (3) months from the date of the first publication of the notice or thereafter be barred.* The publication shall include a notice to debtors to make payment and to creditors having claims against the decedent to file them with the necessary vouchers in the office of the clerk of court from which the letters were issued within three (3) months from the date of the first publication of the notice, or thereafter be forever barred. [Emphasis added.]

**7.** W.S. 2–7–205(a) provides:

The notice required in W.S. 2–7–201 shall, immediately upon the filing thereof, be mailed to the surviving spouse, if any, and to all of the heirs and beneficiaries named in the will of the decedent.

to constitute substantial compliance to meet the statutory mandate.

Additionally, this situation is more egregious than the one this court faced in *Hanson v. Estate of Belden*, 668 P.2d 1331 (Wyo.1983) involving a similar matter in a slightly different context where strict compliance was required. The sufficiency of the notice to start the thirty day period for filing a claim after rejection under W.S. 2–7–718 was questioned, since it arrived by ordinary and not certified mail, although acknowledged to be timely received by the creditor. In Hanson, this court held that the notice provisions in the probate code mandate strict compliance when dealing with creditors and a short period of limitations. While the time for setting aside a will is longer than thirty days, the notice of time to set aside the will is crucial and as final to an heir as to a creditor. Moreover, in Hanson, unquestionably, the creditor received notice albeit through an improper route. In the instant case, appellant denies ever receiving any notice which must be taken as true as this summary judgment stage when the record is viewed most favorably to her. Consequently, the district court erred as a matter of law in not requiring the notice to comply with W.S. 2–7–201, especially when a genuine issue of material fact exists as to whether appellant ever received any actual notice.

In summary, Wyoming law controls as to real property located within this state, and the Wyoming notice provisions were not strictly complied with. The "special public policy" of prompt settlement of estates cannot be achieved unless the published notice is initially statutorily sufficient to trigger the three months time. *Hartt*, 287 P.2d at 653. No proper notice has yet been published sufficient to trigger the start of the three months time to file an action to set aside this will. Consequently, the district court erred in dismissing this contest action as filed too late. The complaint was not untimely, since it predated proper notice.

### DISMISSAL FOR LACK OF PARTICULARITY IN PLEADING FRAUD

The decision of the district court was premised on giving full faith and credit to the California proceeding. The district court stated that "[i]t seems clear that our statute requires full faith and credit to be given to wills duly admitted to probate in other jurisdictions." The recitation of factual events regarding California probate and notice of Wyoming probate may be interesting but immaterial, since we hold that issues of will validity as affecting Wyoming real estate will be determined in this Wyoming proceeding.

As a proponent of the will, appellee only responded procedurally by a motion to dismiss and the substantive sufficiency of appellant's pleading to properly attack the will itself for undue influence or whatever was not presented for trial court decision.[8] Consequently, pleading sufficiency of the complaint is not now considered. *Knudson v. Hilzer*, 551 P.2d 680 (Wyo.1976).

Reversed and remanded for further proceedings in conformity with this opinion.

---

**8.** Broadly alleged, but not otherwise addressed by documentary evidence, are most nefarious

goings on involving California will execution and probate proceedings.