In the Matter of the **ESTATE OF Joseph ZELIKOVITZ, Deceased.**

No. 95–265.

Supreme Court of Wyoming.

Sept. 12, 1996.

Henry C. Phibbs, II of Phibbs Law Office P.C., Jackson, for Appellant Melba Zelikovitz.

Floyd R. King of King & King, Jackson, for Appellees Susan Zelikovitz, Elaine Stein, and Steven Zelikovitz.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN * and LEHMAN, JJ.

THOMAS, Justice.

The issue is what law governs the execution of the codicil of Joseph Zelikovitz (Zelikovitz), a Wyoming resident, who executed the codicil in Oklahoma, and who died in Teton County. We hold, contrary to the decision of the trial court, that the critical codicil was executed according to the law of Wyoming, and it should be admitted to probate. We reverse the Order Granting Petition to Revoke Probate of Second Codicil, and we remand the case to the probate court for further proceedings in accordance with this opinion.

In the Brief of Appellant Melba Zelikovitz (Melba), these are the asserted issues:

1. Whether the district court was in error in its ruling that since the adoption of the new Wyoming Probate Code in 1980, California law is neither controlling or persuasive authority in the determination of questions of first impression involving provisions of the Probate Code.

2. Whether under California precedent the district court was in error in ruling

that a notary public who observed a decedent sign a codicil, knowing that it was a codicil, and signed the document as notary, should be considered to be a witness to the execution of the codicil under W.S. § 2–6–112.

3. Whether the district court erred in its choice of law when it ruled that Oklahoma law was controlling, as the Oklahoma precedent was based on different statutory language from Wyoming, and the use of such law resulted in the defeat of a testator's clear intention on the basis of a technicality not present in the Wyoming Probate Code.

The Brief of Appellees Susan Zelikovitz, Elaine Zelikovitz Stein and Steven Zelikovitz (Zelikovitz children) states the issues in this way:

There is one principal issue presented for review which the appellees would state as follows:

Was the attempted second codicil of the decedent, Joseph Zelikovitz, properly executed according to law and therefore entitled to be admitted to probate in the state of Wyoming?

The two sub-issues involve the choice of law and the statutory requirements in the State of Oklahoma where the codicil was prepared and executed. The appellees believe those issues should be stated as follows:

I. The probate court was correct in determining that since the adoption of the Wyoming Probate Code the California precedents have not been controlling or extremely persuasive and that the court would look to Oklahoma law to determine the codicil's validity.

II. The probate court was correct in determining that under Oklahoma law the codicil was invalid as not having been properly executed and was not entitled to be admitted to probate in the state of Wyoming.

Zelikovitz executed his Last Will and Testament (Will) on June 6, 1990, in which he bequeathed $25,000 to Steven Zelikovitz stat-

* Chief Justice at time of oral argument.

ing, "he has already benefited from my estate during his lifetime." The residue of the estate, except for certain described limited and specific bequests, was bequeathed to Susan Zelikovitz and Elaine Zelikovitz. The Will named Steven Zelikovitz, Elliot Levitan, and David Ross as executors and trustees. About six months later, Zelikovitz executed a first codicil in which he revoked the appointment of Levitan and Ross as executors and trustees and appointed Susan and Elaine in their stead.

By November 7, 1994, a document entitled "Joseph's Last Will & Testament" (second codicil) had been prepared, which actually was in the handwriting of Zelikovitz' wife, Melba. That document is the focus of this case. The second codicil removed Steven Zelikovitz and David Ross as executors and trustees, removed Susan and Elaine as executors and trustees named in the first codicil, and appointed Jerry Owen and Bernie Greenblott as new executors and trustees. The second codicil, including interlineation, provided:

Joseph's Last Will & Testament
\*       \*       \*       \*       \*       \*

Last Will & Testament

Residuary Estate—I ~~ea~~ revoke all of this paragraph and in its place all ~~my~~ the residue of my estate shall go to my wife, Melba Zelikovitz, for her ~~soul~~ sole benefit.

Add all my personal papers, patents, patent pendings and all my development work, lab models plus all my personal property and effects, art, glass sculptures, etc. will become the sole undisputed property of my beloved wife, Melba Zelikovitz.

On November 7, 1994, Zelikovitz and Melba went to the Grove Tag Agency (Agency) [1] in Grove, Oklahoma. Activity at the Agency was tumultuous because it was open for the first day at a new location, was short the services of two employees, and was experiencing computer problems and a heavy vol-

ume of business transactions when the Zelikovitz couple arrived. Zelikovitz and Melba sought out Dee Lawson (Lawson), an acquaintance who was employed at the Agency. Zelikovitz explained to Lawson he was making some changes to his Will, and he asked that a notary public and two people witness the execution of the second codicil and a document addressed to his attorney in Jackson, Wyoming.

Lawson asked the owner of the Agency, Susie Nichols (Nichols), to serve as the notary public. Both Lawson and Nichols understood the document represented changes to Zelikovitz' Will, and they saw him sign the second codicil. After observing Zelikovitz sign the second codicil, Nichols wrote: "Signed before me this 7th day of Nov 1994 Susie Nichols 11–08–97 [expiration date of notary commission]" before Lawson or any other witness signed the document. Apparently Nichols then resumed her duties, and she did not observe anyone else sign the second codicil as a witness. At some point in time, the words "Witnessed by" were added at the bottom of the second codicil, to the left of Zelikovitz' signature, and Lawson signed her name below that, out of the presence of any other witness. Lawson asked Lisa Humble (Humble), another employee of the Agency, to be the second witness. Humble then signed her name below that of Lawson and under the words "Witnessed by." The execution at the end of the document reads:

Witnessed by:
Dee A. Lawson /s/       Joseph Zelikovitz Nov 7 / 1994 /s/
Lisa Humble /s/

Signed before me this 7th day of Nov 1994 Susie Nichols 11–08–97 /s/

Zelikovitz and Melba then returned to Jackson, Wyoming, where Zelikovitz died on December 3, 1994. All parties are in accord that Zelikovitz was a resident of Teton County at the time of his death, and there appears to be no dispute he was a resident of Teton County at the time the second codicil was executed.

On January 3, 1995, the personal representatives named in the second codicil filed a petition to admit the Will and the two codicils

---

**1.** The Grove Tag Agency, on behalf of the State of Oklahoma, issued car, boat, and motor vehicle registration as well as driver licenses.

to probate in Teton County. An order was entered admitting the Will and the two codicils to probate and appointing the personal representatives named in the second codicil. Some three days following that order, the Zelikovitz children filed their petition for probate of the 1990 Will and 1991 codicil without referring to the second codicil. After that petition for probate was presented, the court revoked its order of January 6, 1995 and, on February 1, 1995, the court entered another order admitting the Zelikovitz Will and both codicils to probate. That order also appointed the personal representatives whom Zelikovitz had named in the second codicil, but expressly provided Letters Testamentary should not issue, and did not require the posting of any bond until the court could rule on any action to set aside the Will or any portion of it.

After that last order, the Zelikovitz children filed a Petition to Revoke the Probate of Second Codicil, on which a hearing was held April 20, 1995. The court received testimony from Lawson and Nichols. Humble, both by a deposition and an affidavit, admitted she did not see Zelikovitz, Lawson, or Nichols sign the second codicil, and she had not been informed the document was a codicil or a will. The testimony by Humble established Lawson's signature was already on the document at the time Humble signed it, and Lawson, not Zelikovitz, had asked her to sign the document.

After the hearing, the court entered an Order Granting Petition to Revoke Probate of Second Codicil, stating the execution of the second codicil was governed by Oklahoma law. The court ruled the second codicil was not valid because it did not contain the signature of two subscribing witnesses and found, under Oklahoma law, the notary public would not qualify as a witness. After the court denied her motion to reconsider, Melba appealed from that order.

█ The parties vigorously debate the choice of foreign law, which they contend ought to be applied in this case. We have no reason to resolve that debate. The Will is to

be proved in Teton County pursuant to Wyo. Stat. § 2–2–102(a)(i) (1980). We hold we need to look only to the law of our state to determine the validity of the execution of the second codicil, unless the execution did not conform to the requirements of our statute. Only in that event would we be justified in turning to the law of the place where it was executed.

█ Under our statutes, " '[w]ill' includes the words 'testament' and 'codicil.' " Wyo. Stat. § 8–1–102(a)(viii) (1993). The validity of the execution of a will is governed by Wyo. Stat. § 2–6–116 (1980), which states:

> A written will is valid if executed in compliance with W.S. 2–6–112 or 2–6–113 [2] or if its execution complies with the law at the time of execution of the place where the will is executed, or of the law of the place where at the time of execution or at the time of death the testator is domiciled, has a place of abode or is a national. (Emphasis added.)

The statute refers to Wyo. Stat. § 2–6–112 (1980), which provides, in pertinent part:

> Except as provided in the next section [§ 2–6–113], all wills to be valid shall be in writing, or typewritten, witnessed by two (2) competent witnesses and signed by the testator or by some person in his presence and by his express direction.

Our application of Wyoming law is supported by Wyo. Stat. § 2–6–104 (1980), which offers this guidance concerning the choice of law as to **the meaning and effect of wills:**

> The meaning and legal effect of a disposition in a will is determined by the law of the state in which the will was executed, unless the will otherwise provides or unless the application of that law is contrary to the public policy of this state otherwise applicable to the disposition.

This provision addresses the substantive effect of the language of the will. *See Matter of Reed's Estate,* 768 P.2d 566 (Wyo.1989). Had the legislature intended to apply the law of the place of execution to the requirements

---

**2.** Wyo. Stat. § 2–6–113 (1980) relates to holographic wills and is not relevant to this determi-
nation.

for a valid execution, that direction would have been included in WYO. STAT. § 2–6–104. We would not have WYO. STAT. § 2–6–116 as a part of our statutory scheme.

We have said, "[i]t is the duty of the courts when construing legislation to attempt to effectuate the purposes and intent of the legislature." *State ex rel. Albany County Weed and Pest Dist. v. Bd. of County Comm'rs of Albany County,* 592 P.2d 1154, 1158 (Wyo. 1979). In this instance, the legislature was solid with respect to its intent. It provided, in WYO. STAT. § 2–1–102 (1980), with respect to the issue before us:

> (a) This code shall be liberally construed and applied, to promote the following purposes and policies to:

> \*   \*   \*   \*   \*   \*

> (ii) Discover and make effective the intent of a decedent in distribution of his property; \* \* \*.

All the parties agree Humble would not qualify as a witness under WYO. STAT. § 2–6–112. The findings of the probate court confirm this by stating, "[t]he parties agree that Lisa Humble, the second attesting witness to the decedent's second codicil was not qualified as a witness because she did not actually witness the decedent sign the codicil." We accept that as a proper construction of WYO. STAT. § 2–6–112, but the focus of the issue then becomes whether Nichols, who intended to and did act as a notary public, qualifies as a witness to the second codicil under Wyoming law.

We hold the requirements of WYO. STAT. § 2–6–112 are met. The probate court, in its findings, described the second codicil as a "handwritten will," thus, the requirement that "all wills to be valid shall be in writing, or typewritten" was satisfied. The probate court also found Zelikovitz signed the codicil, and the requirement that it be "signed by the testator" was met. Finally, the probate court, in its findings, states, "Susie Nichols notarized Joseph Zelikovitz' signature and witnessed Zelikovitz sign the document." That is confirmed by another finding stating, "Joseph Zelikovitz signed the second codicil at the end thereof, \* \* \*. He also signed it in the presence of the notary public, Susie Nichols."

There is no provision in the Wyoming statutes, nor any ruling in our cases, that would inhibit the notary public from serving as a witness, even if she intended to and did sign the document as a notary public. The second codicil was "witnessed by two (2) competent witnesses," in accordance with the statute. Nichols satisfied the construction given to WYO. STAT. § 2–6–112 by observing Zelikovitz sign the codicil and then signing herself. There is no requirement in our statutes that the witnesses sign in the presence of one another, although that does foreclose the prospect of having a self-proving will pursuant to WYO. STAT. § 2–6–114 (1980).

We hold, under our law, Nichols qualified as the second witness, and the requirements of our statute for the execution of a valid will were satisfied. In *In re Estate of Carey,* 504 P.2d 793, 801 (Wyo.1972), we repeated the proposition:

> "It was signed by the testator and witnessed by two witnesses at his request. That was sufficient." *In re Stringer's Estate,* 80 Wyo. 389, [424], 343 P.2d 508, 522, rehearing denied and modified on other grounds 80 Wyo. 389, 345 P.2d 786 [ (1959) ].

The second codicil should have been admitted to probate.

■ Melba vigorously contends resolution of this case should be controlled by reference to California decisions. We readily acknowledge we have historically relied upon California decisions on the theory that our probate code was derived from the California Probate Code, and the decisions of the California courts construing parallel provisions were highly persuasive. *Dainton v. Watson,* 658 P.2d 79 (Wyo.1983); *Matter of Kimball's Estate,* 583 P.2d 1274 (Wyo.1978); *Matter of Reed's Estate; In re Randall's Estate,* 506 P.2d 432 (Wyo.1973); *Gaunt v. Kansas University Endowment Ass'n of Lawrence, Kansas,* 379 P.2d 825 (Wyo.1963); *Wilson v. Martinez,* 76 Wyo. 196, 301 P.2d 785 (1956); and *Edelman v. Edelman,* 65 Wyo. 271, 199 P.2d 840 (Wyo.1948). While this approach has been taken in the history of our probate law, we have recognized, in this instance,

there is no need to turn to California law. We conclude adjustments in the probate code of our state and that of California cause us to no longer treat California precedent as having additional persuasive authority with respect to Wyoming probate statutes. California cases will hereafter be afforded the same persuasive weight as those of any other sister jurisdiction.

The Zelikovitz children, as they did in the probate court, rely heavily upon the application of Oklahoma law. For the reasons already articulated, we see no need to turn to the law of Oklahoma to resolve this case. Consequently, we do not do so.

Because the second codicil to the Will was executed in accordance with the appropriate laws of the State of Wyoming, we hold it should have been admitted to probate in Teton County. The Order Granting Petition to Revoke Probate of Second Codicil is reversed, and this case is remanded to the probate court in Teton County for further proceedings in the administration of the estate.