# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 6

OCTOBER TERM, A.D. 2015

January 20, 2016

IN THE MATTER OF THE ESTATE OF
P. RICHARD MEYER, Deceased.

MIRACLES MEYER, Personal
Representative for the Estate of P. Richard
Meyer,

Appellant
(Respondent),

v.                                                                                    S-15-0134

KELLY CATHERINE FANNING,

Appellee
(Petitioner).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
> Weston W. Reeves and Anna Reeves Olson of Park Street Law Office, Casper, Wyoming. Argument by Mr. Reeves.

*Representing Appellee:*
> J. Denny Moffett of Moffett & Associates, PC, Jackson, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]  P. Richard Meyer executed his Last Will & Testament (Will), which complied with the form for self-proving wills set forth in the Wyoming Probate Code. Wyo. Stat. Ann. § 2-6-114 (LexisNexis 2015).  However, when the Will was filed for probate, the witnesses could not recall having seen the testator or each other sign the Will.  Further, one of the witnesses was also the notary.  The district court found that the Will was not self-proving, and that, because the only witness who could recall the Will signing did not remember seeing the other witness sign the Will, there was no way the Will could be proven.  The district court granted summary judgment in favor of the Will contestant and against the Will proponent.  The Will proponent appeals, and we reverse and remand.

## *ISSUE*

[¶2]  Can a non-self-proving will be proven and admitted to probate when the witnesses to the testator's signature cannot recall if the testator signed the will in both their presence?

## *FACTS*

[¶3]  Mr. Meyer executed his Will on March 24, 2008, bequeathing all of his property to his fourth wife, Miracles Meyer, and naming her as his personal representative.  The Will is signed by Mr. Meyer and witnessed by Deborah Walker and Denise Burkel.  All three signatures are in the affidavit form for self-proving wills as set forth in Wyo. Stat. Ann. § 2-6-114, and they are notarized by Denise Burkel. [1]

[¶4]  Mr. Meyer passed away on April 1, 2013.  On April 25, 2013, Miracles Meyer, his wife at the time of his death, filed a petition to probate the Will.  The district court entered an order finding the Will to be self-proving, opened probate, issued letters testamentary, and appointed Mrs. Meyer as personal representative of the estate.

[¶5]  Shortly thereafter, Appellee Kelly Fanning, Mr. Meyer's child from a previous marriage, filed a petition to revoke the order admitting the Will to probate, asserting it had been improperly executed and was the product of undue influence and fraud. [2]  She attached to her petition the affidavits of the two subscribing witnesses, Deborah Walker and Denise Burkel-Groth.

---

[1] Denise Burkel married after the Will was executed and her name is now Denise Groth.  We will refer to her as Denise Burkel-Groth or Ms. Burkel-Groth.

[2] Ms. Fanning subsequently filed her first amended verified petition, which contained additional allegations not pertinent to the issues on appeal.  The district court denied Mrs. Meyer's renewed motion to dismiss Ms. Fanning's petition.

1

[¶6]    In 2008, Ms. Walker was a part-time bookkeeper in the Meyer and Williams law office, where the Will was executed.  Ms. Walker testified by affidavit that "Richard Meyer asked me to sign his Will but did not show me any pages other than the last page, which he and I both signed."  According to her affidavit, she had no recollection of Ms. Burkel-Groth being present or signing the Will, but did recall that Mr. Meyer signed the Will and that Mrs. Meyer was present.  Ms. Walker also stated, "I specifically recall that I did not witness anyone other than myself and Richard Meyer sign the Will, and I did not see anyone notarize the Will."  Ms. Walker later testified in her deposition that she had no memory of seeing Mr. Meyer sign the Will or whether his signature was on the Will prior to her signature.

[¶7]    The second witness and notary, Ms. Burkel-Groth, worked as a legal assistant at another law firm in the same building.  Ms. Burkel-Groth had no specific memory of witnessing the Will.  She testified, "I have no doubt that it happened, but [I do not remember] any specifics of that day[.]"  Ms. Burkel-Groth gave conflicting testimony about her course of conduct as a notary: first testifying in her affidavit that she "often notarized documents that were presented to me in my office, although I was not present while the documents were actually signed[,]" and then modifying that statement in her deposition to explain that she "more often than not" witnessed signatures on documents she notarized, or that she "always" saw the person sign the documents she notarized.

[¶8]    The Will contained the following attestation clause:

> The undersigned witnesses, sign our names to this instrument, being first duly sworn and do hereby declare to the undersigned authority that P. Richard Meyer signs and executes this instrument as his last Will and that he signs it willingly and that he executes it as his free and voluntary act for the purposes therein expressed, and that each of us, in the conscious presence of P. Richard Meyer, hereby sign this Will as witness to his signing, and that to the best of our knowledge P. Richard Meyer is eighteen years of age or older, of sound mind, and under no constraint or undue influence.

This clause appears immediately below the signature of Mr. Meyer and immediately above the signatures of both Ms. Walker and Ms. Burkel-Groth.  Both Ms. Walker and Ms. Burkel-Groth testified that their signatures on the Will are genuine.

[¶9]    The parties filed cross-motions for summary judgment.  Ms. Fanning asked the district court to find that the Will was not a self-proving will, and could not be proven because it was not possible to satisfy the requirements to prove a non-self-proving will

2

contained in Wyo. Stat. Ann. § 2-6-205. Mrs. Meyer asked the court to admit the Will to probate because it met the requirements for a valid will in Wyo. Stat. Ann. § 2-6-112.[3]

[¶10] The district court concluded that the Will contained two defects that prevented it from being a self-proving will: first, if "Richard Meyer signed the [W]ill in front of Ms. Walker, but Ms. Burkel-Groth was not present, then both witnesses did not witness the testator's signature[;]" second, if both witnesses were not present, there could not have been the "simultaneous" execution and attestation required for a self-proving will. In addition, the district court held that a person could not act as both a witness and a notary; therefore Ms. Burkel-Groth's signature in one capacity or another was not valid. There would either not be two attesting witnesses, or there would be no notary, and thus, the Will could not be self-proving.

[¶11] The district court next considered Ms. Fanning's contention that the Will was not capable of proof. The court held that if a will is not self-proving, it must be proven by "oral or written testimony of one or more of the subscribing witnesses to the will. Wyo. Stat. § 2-6-205(a). If both witnesses are deceased or unavailable, a different method of proof may be used. § 2-6-205(c)." The court also determined proof by both affidavit and deposition pursuant to § 2-6-205 requires that the testimony of a witness establish that "the will was signed by the witnesses 'in the presence of said testator and in the presence of each other.' Wyo. Stat. § 2-6-205(a)." The court found that, because neither witness could testify that they saw Mr. Meyer sign the Will, or that they signed the Will "in the presence of said testator and in the presence of each other," the Will could not be proven. The court held that, although they are not expressly stated in those subsections, these requirements also applied to an attempt to prove a will by deposition under § 2-6-205(b), or by oral testimony under § 2-6-205(a), construing the statutes in *pari materia*. The court rejected Mrs. Meyer's attempt to introduce other evidence, such as her own affidavit,[4] determining that such proof could only be considered when both witnesses are unavailable, under § 2-6-205(c).

---

[3]        Except as provided in the next section [§ 2-6-113], all wills to be valid shall be in writing, or typewritten, witnessed by two (2) competent witnesses and signed by the testator or by some person in his presence and by his express direction. If the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency shall not prevent the probate and allowance of the will. No subscribing witness to any will can derive any benefit therefrom unless there are two (2) disinterested and competent witnesses to the same, but if without a will the witness would be entitled to any portion of the testator's estate, the witness may still receive the portion to the extent and value of the amount devised.

Wyo. Stat. Ann. § 2-6-112 (LexisNexis 2015).

[4] Mrs. Meyer stated she was present at the time the Will was executed, and recalls both witnesses being present.

3

[¶12] The district court then turned to Mrs. Meyer's summary judgment motion. She argued that the Will was a valid will in compliance with § 2-6-112 (to be valid, a non-holographic will must be written and signed by the testator and two witnesses). The court rejected this argument, holding that "Compliance with the minimum requirements of Wyo. Stat. § 2-6-112 for a will does not prove a will." The court held:

> Under the probate code, a will may be admitted to probate upon due execution (1) as a self-proving will; (2) by written testimony as a non-self-proving will; or (3) by deposition testimony as a non-self-proving will. If both subscribing witnesses are deceased or otherwise not available then there may be a fourth method of proof by other evidence. This is not a case where both subscribing witnesses are unavailable.

[¶13] The district court then disposed of Mrs. Meyer's argument that a notary's signature is presumptive proof that the notary witnessed the signatures, holding that such a presumption is clearly rebutted by the testimony of Ms. Walker that Ms. Burkel-Groth was not present when Richard Meyer and Ms. Walker signed the Will, and by Ms. Burkel-Groth's own testimony that she did not always witness the signatures that she notarized.

[¶14] The district court granted Ms. Fanning's motion for summary judgment and denied Mrs. Meyer's cross motion for summary judgment. This appeal followed.

### STANDARD OF REVIEW

[¶15] Motions for summary judgment are made pursuant to Rule 56(c) of the Wyoming Rules of Civil Procedure, which requires that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> . . . .
>
> . . . We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling.

4

*Mont. Food, LLC v. Todosijevic*, 2015 WY 26, ¶ 10, 344 P.3d 751, 754-55 (Wyo. 2015) (citing *Miner v. Jesse & Grace, LLC*, 2014 WY 17, ¶ 16, 317 P.3d 1124, 1131 (Wyo. 2014), quoting *Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011)) (internal citations omitted).

## *DISCUSSION*

### *The Statutory Conflict*

[¶16]  The result of the analysis adopted by the district court and urged upon us by Ms. Fanning is that a "valid" will pursuant to § 2-6-112 could be impossible to prove under § 2-6-205.  In order to resolve this apparent conflict, we turn to our rules of statutory interpretation.

[¶17]  Our review of a district court's statutory interpretation is *de novo*.  *Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo. 2014).  In interpreting statutes, we first look to the plain language of the statute to determine the legislature's intent.  *Wyo. Cmty. Coll. Comm'n v. Casper Cmty. Coll. Dist.*, 2001 WY 86, ¶¶ 16-17, 31 P.3d 1242, 1249 (Wyo. 2001); *Fontaine v. Bd. of Cty. Comm'rs*, 4 P.3d 890, 894 (Wyo. 2000); *State ex rel. Motor Vehicle Div. v. Holtz*, 674 P.2d 732, 736 (Wyo. 1983).  We examine the plain and ordinary meaning of the words used by the legislature to determine whether the statute is ambiguous.  *Wyo. Cmty. Coll. Comm'n*, 2001 WY 86, ¶¶ 16-17, 31 P.3d at 1249.

> A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability.  *Parker Land & Cattle* [*Co. v. Game & Fish Comm'n*, 845 P.2d 1040,] 1043 [(Wyo. 1993)].  Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations.  *Id.*  . . . . Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court.  *Allied-Signal* [*v. Wyo. State Bd. of Equalization*], 813 P.2d [214,] 219 [(Wyo. 1991)].

*Id*. at ¶ 17, 31 P.3d at 1249.

[¶18]  The Wyoming Probate Code provides that, except in the case of holographic wills, "all wills to be valid shall be in writing, or typewritten, witnessed by two (2) competent witnesses and signed by the testator or by some person in his presence and by his express direction."  Wyo. Stat. Ann. § 2-6-112.  Yet, to be admitted to probate, a "valid" will must still be proven.

5

[¶19] Wyo. Stat. Ann. § 2-6-203(a) (LexisNexis 2015) provides:

> Upon the filing of a petition for probate of a will, the court or the clerk may hear it forthwith or at such time and place as the court or clerk may direct, with or without requiring notice, and upon proof of due execution of the will, admit the same to probate.

Such proof may be provided in several ways. If a will is self-proving in compliance with § 2-6-114, it "shall be probated without further proof." Wyo. Stat. Ann. § 2-6-204 (LexisNexis 2015). If a will is not self-proving, it may be proven with or without a hearing by complying with Wyo. Stat. Ann. § 2-6-205 (LexisNexis 2015):

### § 2-6-205. Proof; wills not self-proving.

(a) If the will is not self-proving, proof of a will may be made **by the oral or written testimony** of one or more of the subscribing witnesses to the will. If the testimony is in writing, it shall be substantially in the following form, executed and sworn to contemporaneously with the execution of the will or at any time thereafter, whether before or after the date of death of the testator:

In the District Court of Wyoming
In and for ............... County

In the Matter of the Estate of )     Probate No. ........
............... Deceased    )    Testimony of Subscribing
State of ...............     ) ss  Witness on Probate of Will
............... County     )

I, ...., being first duly sworn, state:

I reside in the County of...., State of....; I knew the testator on the... day of...., (year), the date of the instrument, the original or exact reproduction of which is attached hereto, now shown to me, and purporting to be the last will and testament of the said....; I am one of the subscribing witnesses to said instrument; and on the said date of said instrument, I knew...., the other subscribing witness; and said instrument was exhibited to me and to the other subscribing witness by the testator, who declared the same to be his last will and testament, and was signed by the testator at...., in the County

of...., State of...., on the date shown in said instrument, ***in the presence of myself and the other subscribing witness; and the other subscribing witness and I then and there, at the request of the testator, in the presence of said testator and in the presence of each other, subscribed our names thereto as witnesses.***

Name of witness ………………..
Address …………………………
    Subscribed and sworn to before me this.... day of...., (year).
Notary Public in and for…………
County of ………………………..
State of …………………………..
(SEAL)

    (b)   If it is desired to prove the execution of the will by deposition rather than by use of the affidavit form provided in subsection (a) of this section, upon application the clerk shall issue a commission to some officer authorized by the law of this state to take depositions, with the will annexed, and the officer taking the deposition shall exhibit it to the witness for identification, and, when identified by him, shall mark it as "Exhibit .........." and cause the witness to connect his identification with it as such exhibit. Before sending out the commission the clerk shall make and retain in his office a true copy of the will.

    (c)   If all of the witnesses are deceased or otherwise not available, it is permissible to prove the will by the sworn testimony of two (2) credible disinterested witnesses that the signature to the will is in the handwriting of the person whose will it purports to be, and that the signatures of the witnesses are in the handwriting of the witnesses, or it may be proved by other sufficient evidence of the execution of the will.

(Emphasis added.)

[¶20]  There is ambiguity in the conflict between the requirements for a valid will at § 2-6-112, and the seemingly additional requirements for proof by affidavit at § 2-6-205(a). One leading commentator questioned

> whether [§ 2-6-205] has in effect created its own execution process. If the requirements of the affidavit are substantive formalities, the affidavit will not be useable for a previously

7

executed will unless it was executed according to all of the stated formalities even though the will would otherwise be valid in Wyoming. Anomalously, the formality procedure outlined in this affidavit is even more demanding than what the self-proven affidavit requires.

Lawrence H. Averill, Jr., *The Wyoming Probate Code of 1980: An Analysis and Critique*, XVI Land & Water L. Rev. No. 1, 103, 127-28 (1981).

[¶21] Once we determine the language of a statute is ambiguous, "we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature." *Powder River Basin Res. Council*, 2014 WY 37, ¶ 19, 320 P.3d at 229 (citing *Mountain Cement Co. v. S. of Laramie Water & Sewer Dist.*, 2011 WY 81, ¶ 13, 255 P.3d 881, 886 (Wyo. 2011) (quoting *BP Am. Prod. Co. v. Dep't of Revenue*, 2005 WY 60, ¶ 15, 112 P.3d 596, 604 (Wyo. 2005))). "[W]e must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation." *Powder River Basin Res. Council*, 2014 WY 37, ¶ 19, 320 P.3d at 228 (citing *Billis v. State*, 800 P.2d 401, 413 (Wyo. 1990); *McGuire v. McGuire*, 608 P.2d 1278, 1283 (Wyo. 1980)). We read the statutes together, and construe statutes relating to the same subject in harmony. *Wyo. Cmty. Coll. Comm'n*, 2001 WY 86, ¶¶ 16-17, 31 P.3d at 1249.

> In ascertaining the legislative intent in enacting a statute . . . the court . . . must look to the mischief the act was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conditions of the law and all other prior and contemporaneous facts and circumstances that would enable the court intelligently to determine the intention of the lawmaking body.
>
> *Parker Land & Cattle Co.* [*v. Game & Fish Comm'n*, 845 P.2d 1040,] 1044 [(Wyo. 1993)] (quoting *Carter v. Thompson Realty Co.*, 58 Wyo. 279, 131 P.2d 297, 299 (1942)).

*Id*. at ¶ 18, 31 P.3d at 1249; *see also* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland on Statutes and Statutory Construction* § 45:5 at 35 (7th ed. 2007).

8

*Legislative Intent*

[¶22]  The legislature stated its intent in enacting the Probate Code reforms in 1979 was to simplify the probate process to effectuate the intent of the testator.  It enacted Wyo. Stat. Ann. § 2-1-102 (LexisNexis 2015), which states:

> (a)  [The Probate Code] shall be liberally construed and applied, to promote the following purposes and policies to:
>
> (i)  ***Simplify and clarify the law*** concerning the affairs of decedents, missing persons, protected persons, minors and incapacitated persons;
>
> (ii)  Discover and ***make effective the intent of a decedent*** in distribution of his property;
>
> (iii)  ***Promote a speedy and efficient system*** for liquidating the estate of the decedent and making distribution to his successors;
>
> (b)  Unless displaced by the particular provisions of this code, the principles of law and equity supplement the code provisions.
>
> (c)  This code is a general act intended as a unified coverage of its subject matter and no part of it shall be deemed impliedly repealed by subsequent legislation if it can reasonably be avoided.

(Emphasis added.)

[¶23]  This objective is consistent with the historical setting surrounding the laws' enactment.  *See* 2B Norman J. Singer & J.D. Shambie Singer, *Sutherland on Statutes and Statutory Construction* § 49:1 at 7 (7th ed. 2008) ("Statutes are documents having practical effects.  It is therefore improper to construe them in the abstract, without taking into consideration the historical framework in which they exist.").  Traditional estate planning law was based on formality and bright-line principles governing the creation, interpretation, and construction of wills.  As one commentator has explained:

> The act of creating a will has always been somewhat ceremonial: In medieval England, testators often expressed their wishes on the verge of death, as part of their last confession.  The march toward modern formality began in the seventeenth century, when the process for determining title to real estate had fallen into shambles.  Bogus sales of land -- especially land that the seller claimed to have inherited -- were endemic.  To make proof of ownership more reliable,

9

the British Parliament passed the Statute of Frauds in 1677, thus mandating that wills conveying real property "shall be in Writeing, [sic] and signed by the [testator], . . . and shall be attested and subscribed in the presence of [the testator] by three or fower [sic] credible Witnesses." This last element -- attestation -- distinguished wills from gifts and contracts, which never need to be witnessed. . . . [T]he Wills Act extended the attestation requirement to all wills. The new legislation also reduced the number of witnesses to two, but added the element that these individuals needed to be "present at the same time" when the testator signed or acknowledged her signature. This stringent approach to will creation migrated across the Atlantic and became enshrined in virtually every American state.

David Horton, *Wills Law on the Ground*, 62 UCLA L. Rev. 1094, 1104-05 (2015) (citations omitted). Courts charged with construction of wills placed form before substance and refused to consider extrinsic evidence in their interpretations, often resulting in nonsensical outcomes clearly contrary to the testator's intent. *Id*. at 1107 ("[O]nly the words of the document were reliable. It was the will itself -- and not a testator's stray statements -- that arose within the prophylactic bubble of the statutory formalities.").

[¶24] Recognizing that this adherence to formality was unique to the area of the law of wills and probate, scholars began criticizing this approach:

What is peculiar about the law of wills is not the prominence of the formalities, but the judicial insistence that any defect in complying with them automatically and inevitably voids the will. In other areas where legislation imposes formal requirements, the courts have taken a purposive approach to formal defects. . . . The courts have boasted that they do not permit formal safeguards to be turned into instruments of injustice in cases where the purposes of the formalities are independently satisfied.

John H. Langbein, *Substantial Compliance with the Wills Act*, 88 Harv. L. Rev. 489, 498-99 (1975) (urging courts to require "substantial compliance" with, instead of strict adherence to, wills act provisions).

[¶25] The confluence of such scholarly criticism and the proliferation of other methods of transferring property on death, such as joint tenancy, life insurance, and trusts, led to re-thinking the formal approach to wills. *Id*. at 504 (stating "if the will is to be restored to

its role as the major instrument for disposition of wealth at death, its execution must be kept simple. The basic intent . . . is to validate the will whenever possible."); *see also* Uniform Probate Code, Article II, Part 5 (general comment) (1969). Over the last half century, the formalistic approach has gradually given way to a more functional method of construing wills. Horton, 62 UCLA L. Rev. at 1112-15.

[¶26] Although it has been renumbered, § 2-6-112, which establishes what is required for a valid will, has been part of the Wyoming Probate Code since the 1880s. 1882 Wyo. Sess. Laws, ch. 107 § 4. In 1979, the Wyoming legislature enacted sweeping changes to the Probate Code, 1979 Wyo. Sess. Laws, ch. 142, and due to "a significant number of technical and substantive problems," Averill, *supra* ¶ 20, at 105-06, the legislature reenacted an amended version of the Probate Code in 1980. 1980 Wyo. Sess. Laws, ch. 54. These changes were patterned after the Uniform Probate Code and the Iowa Probate Code in existence at that time. Averill, *supra* ¶ 20, app. I at 392-94 (indicating that all but three of the changes originated in the Iowa Probate Code).

[¶27] The 1979 amendments included the addition of § 2-6-405 (renumbered § 2-6-205 in 1980), regarding proof of non-self-proving wills. 1979 Wyo. Sess. Laws, ch. 142. That provision was patterned after the Iowa Probate Code, which contains nearly identical language for the proof of a will. Averill, *supra* ¶ 20, app. I at 391;[5] Iowa Code §§ 633.295 – 633.297 (1979). When proof of a will is to be made by a witness affidavit, the affidavit must state that the witness signed the will in the presence of the testator and in the presence of the other witness. Iowa Code § 633.295 This provision conforms with Iowa's requirement for a valid will, which must be witnessed by two witnesses "in the presence of the testator and in the presence of each other." Iowa Code § 633.279(1). Thus, in Iowa, the requirements for proof of a will by affidavit did not exceed the requirement for forming a valid will. That is not the case in Wyoming. *See* Averill, *supra* ¶ 20, at 127 ("The execution of an ordinary witnessed will under Iowa law is substantially more formalistic than under Wyoming law according to either the prior law or the new Code.").

[¶28] In Wyoming, when the legislature enacted § 2-6-205, it added several requirements for proof of a will by affidavit found nowhere else in the Wyoming Probate Code. Most notably, the stringent requirements for proving a will by affidavit (the will must be signed by the testator in the presence of both witnesses, and the signatures of both witnesses must be made in the presence of the testator and in the presence of each other) reach far beyond what Wyoming statutes require to create a valid will. *Compare* Wyo. Stat. Ann. §§ 2-6-112 and 116 *with* Wyo. Stat. Ann. § 2-6-205(a). If § 2-6-205(a) has created additional substantive formalities required to execute a will, then the

---

[5] The self-proving will statute, Wyo. Stat. Ann. § 2-6-114 (then § 2-6-203), was added at the same time and was also patterned after the Iowa Code. Averill, *supra* ¶ 20, app. I at 391.

provision defining a valid will (§ 2-6-112) is rendered meaningless. We therefore consider whether the legislature impliedly repealed § 2-6-112.

[¶29]     [O]ur longstanding rule is that repeals by implication are not favored and will not be indulged if there is any other reasonable construction. One asserting implied repeal bears the burden of demonstrating beyond question that the legislature intended that its later legislative action evinced an unequivocal purpose of affecting a repeal. Furthermore, it must be shown that the later statute is so repugnant to the earlier one that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject.

*Mathewson v. City of Cheyenne*, 2003 WY 10, ¶ 11, 61 P.3d 1229, 1233 (Wyo. 2003) (quoting *Shumway v. Worthey*, 2001 WY 130, ¶ 15, 37 P.3d 361, 367 (Wyo. 2001)). The legislature specifically reasserted this rule when it enacted the 1979 and 1980 statutory amendments, and included the statement that "[t]his code is a general act intended as a unified coverage of its subject matter and no part of it shall be deemed impliedly repealed by subsequent legislation if it can reasonably be avoided." Wyo. Stat. Ann. § 2-1-102(c). Further, at the same time the Wyoming legislature adopted the proof of wills provision, it enacted the statute reaffirming what is considered to be a valid will, § 2-6-116.[6] 1979 Wyo. Sess. Laws, ch. 142. We cannot conclude that § 2-6-112 was impliedly repealed when the legislature enacted § 2-6-205.

[¶30] Taking into account the legislature's stated intent to simplify and expedite the probate process so as to effectuate the testator's intent, § 2-1-102, the historical context of the Probate Code revisions, and the legislature's affirmance of § 2-6-112, we conclude the legislature did not intend to impose additional substantive formalities for executing a will when it enacted § 2-6-205. Our conclusion is further supported by other provisions for proving a non-self-proving will that demonstrate the legislative intent to simplify the process. *See Hede v. Gilstrap*, 2005 WY 24, ¶ 6, 107 P.3d 158, 163 (Wyo. 2005) ("We are guided by the full text of the statute, paying attention to its internal structure and the functional relation between the parts and the whole."). For example, the code provides for proof of holographic wills "the same as any other private writing," Wyo. Stat. Ann. § 2-6-206 (LexisNexis 2015), and directs the district court to "take proof of the execution and validity" of lost or destroyed wills, Wyo. Stat. Ann. § 2-6-207 (LexisNexis 2015).

---

[6] "A written will is valid if executed in compliance with W.S. 2-6-112[.]" Wyo. Stat. Ann. § 2-6-116 (LexisNexis 2015). A valid will "shall be in writing . . . witnessed by two (2) competent witnesses and signed by the testator or by some person in his presence and by his express direction." Wyo. Stat. Ann. § 2-6-112.

12

These provisions are consistent with a legislative purpose to relax formalistic requirements to effectuate the testator's intent.

[¶31] The legislative objective when it enacted the 1979 and 1980 revisions to Wyoming's Probate Code was to simplify the law rather than complicate it. The addition of § 2-6-205 did not signal the legislature's intent to move toward a more formalistic approach in creating or proving wills. We hold that the legislature did not intend to add additional elements of formality for formation of a will, nor did it intend to create mandatory additional elements of proof for all non-self-proving wills. Rather, § 2-6-205(a) created a specific requirement that the witnesses sign in the presence of each other only when that proof is offered by affidavit.

> It is a basic rule of statutory construction that courts may try to determine legislative intent by considering the type of statute being interpreted and what the legislature intended by the language used, viewed in light of the objects and purposes to be accomplished. . . . Furthermore, when we are confronted with two possible but conflicting conclusions, we will choose the one most logically designed to cure the mischief or inequity that the legislature was attempting to accomplish.

*Hede*, 2005 WY 24, ¶ 6, 107 P.3d at 162-63 (internal quotation marks and citation omitted).

[¶32] Our holding is consistent with the less formalistic approach to proving wills this Court has taken since the 1979 and 1980 revisions. In *In re Estate of Altman*, a self-proving will was challenged because one of the will's witnesses testified that "he did not sign the will in the presence of the testator or [the other witness] but that it was brought downstairs to his store by appellee where he signed it." 650 P.2d 277, 280 (Wyo. 1982). The district court held a jury trial, at which the other witness and the will's proponent both testified as to the will's signing. The jury determined they were more credible than the recanting witness, and this Court affirmed, holding that it was the jury's role to determine the credibility of witnesses. *Id.* In *In re Estate of Zelikovitz*, 923 P.2d 740 (Wyo. 1996), the testator's signature on a will codicil was witnessed by one person who saw the testator sign and signed as a witness; by one person who signed as a notary public, but who did not see the witnesses sign the will, *id.* at 742; and by a third person who signed as a witness but "did not actually witness the decedent sign the codicil." *Id.* at 744. This Court agreed that the third person could not qualify as a witness because she had not seen the testator sign the codicil. However, this Court went on to say that the person who signed as a notary could serve as a witness, and that **"[t]here is no requirement in our statutes that the witnesses sign in the presence of one another**[.]" *Id.* at 744 (emphasis added). That holding is consistent with our interpretation that the

13

requirement that witnesses sign in the presence of each other is limited to proof by affidavit under § 2-6-205(a).

[¶33] In *Matter of Estate of Croft*, 713 P.2d 782 (Wyo. 1986), the will's contestants pointed to a mistake in the will codicil, which referred to a will with the incorrect date. *Id.* at 784. This Court approved the approach taken by the district court, "[t]o fulfill its obligation to liberally construe and apply the Wyoming Probate Code so as to promote the purpose and policy thereof through discovering and making effective the intent of Croft (§ 2-1-102(a)(ii)), the probate court properly received extrinsic evidence relative to such intent." *Id.* It held that such extrinsic evidence supported the probate court's conclusion that the referenced date was a mistake, and the codicil should be given effect. *Id.* at 786. This precedent indicates an approach that avoids formalism in order to effectuate the testator's intent.

***Proving a Will***

[¶34] Wyoming's Probate Code directs the clerk of court to admit a will to probate "upon proof of due execution." Wyo. Stat. Ann. § 2-6-203 (LexisNexis 2015). "Due execution" is not defined in the Probate Code. "In the absence of a statutory definition, this Court infers that the legislature intended no special meaning for the word but, instead, intended that it be given its ordinary meaning—its common dictionary definition." *Thomas v. Sumner*, 2015 WY 7, ¶ 32, 341 P.3d 390, 399 (Wyo. 2015) (quoting *Craft v. State*, 2012 WY 166, ¶ 14, 291 P.3d 306, 310 (Wyo. 2012) (citing *Ewing v. State*, 2007 WY 78, ¶¶ 10, 13, 157 P.3d 943, 946 (Wyo. 2007))). "Due" in this context can be defined as "regular, lawful." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/due (last visited Jan. 8, 2016).

[¶35] The due or lawful execution of a will is described in §§ 2-6-112 and 2-6-113. To prove a will for its admission to probate, the proponent must make her prima facie case by presenting evidence showing the will was: (1) in writing or typed; (2) witnessed by two competent witnesses; and (3) signed by the testator or by some person in his presence and by his express direction, in compliance with § 2-6-112, or that the will was a valid holographic will as described in § 2-6-113.

[¶36] A self-proving will that complies with § 2-6-114 requires no additional proof to be admitted to probate, Wyo. Stat. Ann. § 2-6-204, and may be admitted to probate without the testimony of any subscribing witnesses or any other proof. *See, e.g., Westmoreland v. Tallent*, 549 S.E.2d 113, 115-16 (Ga. 2001).

[¶37] If a will is not self-proving, the proponent of the will has the burden of presenting evidence in order to establish its "due execution" before it will be admitted to probate. Wyo. Stat. Ann. § 2-6-203; *see also In re Estate of Wiltfong*, 148 P.3d 465, 466-67 (Colo. App. 2006); *Prima Facie Case for Proponent in Will Contest as Shifting Burden of Proof*,

76 A.L.R. 373 (1932); *Wood v. Wood*, 164 P. 844, 850 (Wyo. 1917). If a prima facie showing is made that the will has been duly executed, then the will is entered into probate. Wyo. Stat. Ann. § 2-6-203.

[¶38] Section 2-6-205 provides the means to prove a non-self-proving will. First, under § 2-6-205(a), a will may be proven by the "oral . . . testimony of one or more of the subscribing witnesses[.]" Second, § 2-6-205(a) sets forth the method of proving a will through affidavit testimony. Third, § 2-6-205(b) allows the proponent of a will to prove it through deposition testimony. Finally, § 2-6-205(c) provides for a method of proving a will when neither witness to the will is "available."

[¶39] In addition to proof by affidavit, § 2-6-205(a) provides that proof of a non-self-proving will "may be made by the oral . . . testimony of one or more of the subscribing witnesses[.]" Section 2-6-203 allows the court to conduct a hearing upon the filing of a petition for probate. The "oral testimony" of a subscribing witness referred to in § 2-6-205(a) could be offered at such a hearing to prove the will. If the proponent of the will is offering proof by affidavit, the affidavit must meet the requirements of § 2-6-205(a), including the requirement that the witnesses signed in the presence of each other and in the presence of the testator.[7] The requirements for proving a will by affidavit at § 2-6-205(a) do not apply to the provision for proof by oral testimony.

> We will not insert language into a statute that the legislature omitted. A basic tenet of statutory construction is that omission of words from a statute is considered to be an

---

[7] The requirement that witnesses sign "in the presence of each other" or "in the presence of the testator" has been interpreted to mean that the witnesses be either in each other's line of vision, or in each other's conscious presence. Restatement (Third) of Prop.: Wills and Donative Transfers § 3.1 at 177 (1999).

> This Restatement adopts the *conscious-presence test*, which recognizes that a person can sense the presence or actions of another without seeing the other person. If the testator and the witnesses are near enough to be able to sense each other's presence, typically by being within earshot of one another, so that the testator knows what is occurring, the presence requirement is satisfied.

*Id*.; *see also Smith v. Neikirk*, 548 S.W.2d 156, 158 (Ky. Ct. App. 1977) ("The record of testimony indicates that witness Runk was within the presence of the testator and the other witnesses at all times. The fact that she may have had her back turned at the moment of execution does not disqualify her as a witness. All that is required to be proved by the subscribing witness is the identification of the signature. . . . It has been repeatedly held that substantial rather than a literal compliance with the statute . . . will suffice. This Court has also indicated that where the technical requirements for execution of wills have been substantially complied with, the will should be probated." (citations omitted)).

> intentional act by the legislature, and this Court will not read words into a statute when the legislature has chosen not to include them.

*Stutzman v. Office of Wyo. State Eng'r*, 2006 WY 30, ¶ 16, 130 P.3d 470, 475 (Wyo. 2006) (citations omitted).

[¶40] Section 2-6-205(b) addresses proof by another type of oral testimony, the deposition. Subsection (b) applies "[i]f it is desired to prove the execution of the will by deposition rather than by use of the affidavit form provided in subsection (a)"; and requires that the officer taking the deposition "cause the witness to connect his identification with [the will]."[8] Wyo. Stat. Ann. § 2-6-205(b). Subsection (b), unlike subsection (a), does not require that the deponent testify that the witness signed the will in the presence of the other witness and the testator. "There is a presumption in law that an omission is intentional where particular words or terms appear in one provision, but not in another related provision." *Schafer v. State*, 2008 WY 149, ¶ 14, 197 P.3d 1247, 1250 (Wyo. 2008) (citation omitted). Because we will not insert language into the statute that the legislature has left out, we will not read that language into subsection (b). *Stutzman*, 2006 WY 30, ¶ 16, 130 P.3d at 475. To establish due execution by deposition, a proponent may prove the will complies with § 2-6-112 by deposition in accordance with subsection (b), and there is no need for the elements of proof found in § 2-6-205(a).

[¶41] Subsection (c) allows for proof of a will when the subscribing witnesses are "not available." Wyo. Stat. Ann. § 2-6-205(c). In that instance, a will may be proven by the "sworn testimony of two (2) credible disinterested witnesses" that the signatures are those of the testator and witnesses, or "it may be proved by other sufficient evidence of the execution of the will." *Id*. Subsection (c) is specifically limited to the situation where no subscribing witness is available. (This is consistent with the pre-1979 provision, which provided that "[i]f none of the subscribing witnesses reside in the county at the time appointed for proving the will, the court may admit the testimony of other witnesses[.]" Wyo. Stat. Ann. § 2-4-305 (Michie 1977)). This begs the question, however, of when a witness is "not available" pursuant to subsection (c).

[¶42] The practice of proving a will through the testimony of a subscribing witness was recognized by this Court in *In re Stringer's Estate*, 80 Wyo. 389, 420, 343 P.2d 508, 520 (1959), *reh'g denied and opinion modified by* 345 P.2d 786 (Wyo. 1959), where we stated:

---

[8] Subsection (b) does not specifically identify who may testify by deposition. Reading subsection (b) along with the limiting language of subsection (c), which allows testimony of non-witnesses to the will only when the witnesses are unavailable, we must conclude that the deponent under subsection (b) must be a witness to the will. If we read the statute any other way, our reading would render the unavailability of witnesses' requirement of subsection (c) meaningless. "This Court will not interpret a statute in a way which renders any portion of it meaningless or in a manner producing absurd results." *Adekale v. State*, 2015 WY 30, ¶ 13, 344 P.3d 761, 765-66 (Wyo. 2015).

While the Code provides that certain things are necessary to the making of a valid will, it does not prescribe how those things shall be proved. It leaves that to the general rules of evidence. There is provision, it is true, that if the attesting witnesses are alive, and present in the county, they must, in the event of a contest, be called. This is a very natural and just provision, for in such case the failure of the proponent of a will to call his attesting witnesses would be a very suspicious circumstance. ***But there is no statutory declaration, and no principle of law, to the effect that a will executed in due form shall go for naught unless an attesting witness, after the lapse of many years, shall continue to recollect everything material that occurred at the time he subscribed his name to it. Such a rule would make the validity of the will dependent, not upon the disposing mind of the testator, nor his freedom from duress, undue influence, or fraud, nor upon his clear expression of his intention in the body of the instrument, nor upon its conformity to the form and ceremony prescribed by statute, but upon the fullness, accuracy, and persistency of the recollection of one of the persons who signed it as a witness.*** Such a rule cannot be maintained either upon principle or precedent. What constitutes a sufficient execution of a will is prescribed by the statute. What constitutes sufficient proof of such execution is not so prescribed, and is a different question, -- a question to be solved by the general principles of evidence. *** *Where an attesting witness has no recollection as to certain matters connected with the making of the will, the case is, upon principle, in the same condition as where he is dead, insane, or absent***[.]

(Citations omitted and emphasis added.) That ruling, based upon the sound reasoning that an otherwise valid and duly executed will should not fail by virtue of the subscribing witnesses' imperfect or absent memory years after affixing their signature to the will, is still applicable today.

[¶43] The legislature has made it clear that the current Probate Code shall be applied to "[s]implify and clarify" the law, and "[d]iscover and make effective the intent of a decedent." Wyo. Stat. Ann. § 2-1-102(a)(i)-(iii). The legislature also instructed that "[u]nless displaced by particular provisions of this code, the principles of law and equity supplement the code provisions." Wyo. Stat. Ann. § 2-1-102(a)(iii)(b). Section 2-6-205(c) does not define when a witness is "not available." Further, no other provisions of

the Probate Code indicate an intent to change or amend our interpretation of when a subscribing witness may be considered unavailable, thereby allowing other evidence in the proof of due execution. "Absent a manifestation of legislative intent to repeal a common-law rule, statutes should be construed as consistent with the common law." *Merrill v. Jansma*, 2004 WY 26, ¶ 34, 86 P.3d 270, 285-86 (Wyo. 2004) (citation omitted). Our conclusion in *Stringer*, 80 Wyo. at 421, 343 P.2d at 520, that a subscribing witness's failure to recollect "certain matters connected" with the execution of the will renders that witness unavailable, is just as valid today as it was before § 2-6-205 was enacted.[9] S*ee also Admissibility of Evidence Other Than Testimony of Subscribing Witnesses to Prove Due Execution of Will, or Testamentary Capacity*, 63 A.L.R. 1195 (1929 & Cum. Supp.) ("[E]vidence other than the testimony of a subscribing witness may be admitted to prove the due execution of a will . . . either by way of supplementing deficiencies in evidence of the attesting witnesses [or by] supplying the proof of attesting witnesses whose testimony is not available[.]").

[¶44]  Under the Wyoming and Federal Rules of Evidence

> a witness who testifies to not remembering the subject matter of his statement is unavailable. A witness may either truly lack recollection or for a variety of reasons, including concern of a possible perjury prosecution, feign lack of recollection. In either event, the witness is unavailable to the extent that he asserts lack of recollection of the subject matter of the prior statement, even if the witness recalls other events.

30C Michael H. Graham, *Federal Practice and Procedure* § 7072 at 354-55 (2011 Interim ed.); *see also* W.R.E. 804(a)(3). It is for the district court to determine whether a witness's memory lapse renders the witness unavailable as to any specific event. *See, e.g.*, *Matter of Estate of Coniglio*, 472 A.2d 205, 207 (Pa. Super. Ct. 1984) (other proof allowed when proof by subscribing witness cannot be "adduced by the exercise of reasonable diligence").

---

[9]  The law makes two subscribing witnesses to a will indispensable to its formal execution. But its validity does not depend solely upon the testimony of the subscribing witnesses. If their memory fail, so that they forget the attestation, or they be so wanting in integrity as willfully to deny it, the will ought not to be lost, but its due execution and attestation should be found on other credible evidence. And so the law provides.

*In re Will of McCauley*, 565 S.E.2d 88, 96 (N.C. 2002) (quotation marks and citations omitted).

[¶45]  The proponent of a non-self-proving will must establish its due execution through the testimony (at a hearing or via affidavit or deposition) of at least one of the subscribing witnesses, if such a witness is available.  If the proponent chooses to prove the due execution of the will by affidavit, she has the additional burden to establish that the witnesses signed in the presence of one another and the testator.  If neither subscribing witness is available, the proponent may establish the due execution using testimony of two credible disinterested witnesses, or other sufficient evidence.

*Meyer's Will*

[¶46]  The district court concluded that Mrs. Meyer could not make out a prima facie case that the Will was self-proving, despite self-proving language contained therein.  We agree that the Will in this case is not self-proving.  To be self-proving, a will must contain attestations by the testator and two witnesses that the will was executed as a "free and voluntary act" by the testator and that the witnesses signed the will as witnesses "in the presence and hearing of the testator."  Wyo. Stat. Ann. § 2-6-114(a), (c) (LexisNexis 2015).  The attestations must be made "before an officer authorized to administer oaths" and "evidenced by the officer's certificate under official seal."  *Id*.  While the Will in this case contains the self-proving language required by the statute, it does not meet the statutory requirements for self-proving wills because it was improperly notarized when Ms. Burkel-Groth signed as the second witness and then notarized her own signature.

[¶47]  Other courts addressing the issue have determined that a notary who signs a will is either a notary or a witness, but cannot be both.  *See In re Estate of Alfara*, 703 N.E.2d 620, 627 (Ill. App. Ct. 1998); *In re Estate of Price*, 871 P.2d 1079, 1083 n.4 (Wash. Ct. App. 1994); *Smith v. Neikirk*, 548 S.W.2d 156, 158 (Ky. Ct. App. 1977); *Ferguson v. Ferguson*, 47 S.E.2d 346, 352 (Va. 1948).  This authority is consistent with the guidance provided to notaries by the Wyoming Secretary of State.  The *Wyoming Notary Handbook* provides that a notary should "[a]bsolutely not!" witness her own signature, explaining: "Since a notary must always be an objective and independent witness, notarizing your own signature defeats the very purpose of notarization. Don't do it." Wyo. Sec'y of State, *Wyoming Notary Handbook*, at 16, http://soswy.state.wy.us/Forms/Publications/NotaryHandbook.pdf (last visited Jan. 8, 2016).

[¶48]  We hold that a notary may not simultaneously act as a notary and a witness.  The notary must be one or the other.  If Ms. Burkel-Groth's signature were to be considered a notarial certificate, there would not be two attesting witnesses and the Will would be invalid.  However, because Ms. Burkel-Groth's signature appears as a witness, it will be considered as such; the fact that she signed as a notary has no legal significance.  *See In re Estate of Zelikovitz*, 923 P.2d at 744 ("There is no provision in the Wyoming Statutes, nor any ruling in our cases, that would inhibit the notary public from serving as a witness . . . although that does foreclose the prospect of having a self-proving will

19

pursuant to Wyo. Stat. § 2-6-114 (1980).”). The Will cannot be a self-proving will because it fails to meet the notarization requirement of § 2-6-114. We therefore affirm the district court's ruling that the Will is not self-proving.[10]

[¶49] The district court further concluded that Mrs. Meyer could not prove the Will by any other method because she could not establish that the witnesses signed the Will in each other's presence. We have determined that conclusion was in error and we therefore reverse. We remand to the district court for a determination of whether Mrs. Meyer can make a prima facie case of the Will's validity by some other method, pursuant to §§ 2-6-203 and 205. Among other things, the district court will need to consider what weight to give the attestation clause in light of the fact that, although the notary certification is invalid, the witnesses seem to have verified that their signatures are valid.

[¶50] In addition, the district court will need to determine whether the subscribing witnesses are available for purposes of § 2-6-205(c). While both witnesses were able to verify their signatures, Ms. Burkel-Groth has no specific memory of the events surrounding the execution of the Will. This alone is sufficient to render Ms. Burkel-Groth unavailable. While Ms. Walker does have a memory of at least some of the events concerning the Will's execution, her testimony conflicts. At one point, Ms. Walker stated that both she and Mr. Meyer signed his Will. At another point, Ms. Walker stated, however, that she had no memory of seeing Mr. Meyer sign the Will. Moreover, Ms. Walker stated in her affidavit that she had "no recollection of Denise Burkel being present," yet stated in her deposition that she had a "vague recollection of someone else being there" but does not remember who it was. These discrepancies create a question of fact as to whether Ms. Walker has an adequate memory to render her available as a witness concerning the events which took place during the execution of the Will. This question can be resolved by the district court after an evaluation of the witnesses at a hearing as prescribed under § 2-6-203.

[¶51] If the district court determines that Mrs. Meyer can establish a prima facie case of due execution of the Will, the burden would then shift to Ms. Fanning to present "some evidence worthy of credence" that the Will was not duly executed. *First Nat'l Bank v. Ford*, 30 Wyo. 110, 119, 216 P. 691, 694 (1923); *Prima Facie Case for Proponent in*

---

[10] The failure of the notary however, does not per se render the Will invalid. The Will appears to meet the requirements for a valid will at § 2-6-112. The purpose of a notary's certificate is that it is "presumptive evidence of the facts contained in such certificate; provided, that any person interested as a party to a suit may contradict, by other evidence, the certificate of a notary public." Wyo. Stat. Ann. § 32-1-107 (LexisNexis 2015). "[T]he general purpose of acknowledgment is to authenticate the instrument as being the act of the person executing it." 1A C.J.S. *Acknowledgment* § 2 at 126 (2005). The attestation clauses, although they are not notarized and therefore fail to satisfy the statutory requirements for self-proving wills or for proof by affidavit, may nevertheless have some evidentiary value. *See, e.g., North Am. Uranium, Inc. v. Johnston*, 316 P.2d 325, 343 (Wyo. 1957) (unacknowledged instrument was not entitled to be placed of record but "was perfectly good as between the parties").

*Will Contest as Shifting Burden of Proof,* 76 A.L.R. 373 (1932); *Wood*, 164 P. at 850. If Ms. Fanning is unable to overcome that burden, and the Will is admitted to probate, it may then be contested on other grounds such as undue influence or fraud.[11]

## *CONCLUSION*

[¶52]  A will's proponent must prove its due execution before it can be admitted to probate.  In most cases, proof of due execution requires proof that the will was (1) in writing or typed; (2) witnessed by two competent witnesses; and (3) signed by the testator or by some person in his presence and by his express direction, in compliance with Wyo. Stat. Ann. § 2-6-112.  If the will is self-proving, it will be admitted to probate with no additional proof other than the will itself.  Wyo. Stat. Ann. §§ 2-6-114, 2-6-204.  If the will is not self-proving, the proponent must present evidence establishing its due execution, either at a hearing of the oral testimony of the subscribing witnesses pursuant to Wyo. Stat. Ann. §§ 2-6-203 and 2-6-205(a), or by affidavit or deposition of the subscribing witnesses according to Wyo. Stat. Ann. § 2-6-205(a) and (b).  When proof is by affidavit, the affidavit must establish that the witnesses signed the will in the presence of the testator and in the presence of each other.  Wyo. Stat. Ann. § 2-6-205(a).  That requirement applies to no other method of proving a non-self-proving will.  If no subscribing witness is available, then the proponent may offer other witnesses or evidence to prove the will.  Wyo. Stat. Ann. § 2-6-205(c).

[¶53]  The district court erred when it concluded that in all cases where a will is not self-proving, the proponent must establish that the witnesses signed the will in the presence of each other and in the presence of the testator.  We therefore reverse and remand to the district court for further proceedings consistent with this opinion.

---

[11]

> After a will has been admitted to probate, any person interested may, within the time designated in the notice provided for in W.S. 2-6-122 or 2-7-201, contest the will or the validity of the will.  For that purpose he shall file in the court in which the will was proved a petition in writing containing his allegations against the validity of the will or against the sufficiency of the proof, and praying that the probate be revoked.

Wyo. Stat. Ann. § 2-6-301 (LexisNexis 2015); s*ee also Russell v. Sullivan*, 2012 WY 20, ¶ 14, 270 P.3d 677, 680 (Wyo. 2012) ("will contest is 'collateral' to the petition to submit the will to probate").